**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 1:22-cv-00481 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| BOTTOMLINE TECHNOLOGIES, INC., | : **SECTIONS 14(a) AND 20(a) OF THE** |
| JOSEPH L. MULLEN, KENNETH J. | : **SECURITIES EXCHANGE ACT OF** |
| D'AMATO, JENNIFER M. GRAY, JEFFREY | : **1934** |
| C. LEATHE, PETER W. GIBSON, PHILIP J. | : |
| HILAL, PAUL H. HOUGH, LARRY A. | : **JURY TRIAL DEMANDED** |
| KLANE, BENJAMIN E. ROBINSON III, | : |
| MICHAEL J. CURRAN, and ROBERT A. | : |
| EBERLE, | : |
| | : |
| Defendants. | |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.  This is an action brought by Plaintiff against Bottomline Technologies, Inc. ("Bottomline or the "Company") and the members Bottomline board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Bottomline by Thoma Bravo, L.P. ("Thoma Bravo") and its affiliates.

2.  Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on January 18, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Project RB Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Project RB Parent, LLC ("Parent"), will merge with and into Bottomline with Bottomline surviving the merger and becoming a wholly owned subsidiary of Parent (the "Proposed Transaction"). Parent and Merger Sub are both affiliates of Thoma Bravo. Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Bottomline common share issued and outstanding will be converted into the right to receive $57.00 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked Bottomline stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Deutsche Bank Securities Inc. ("Deutsche Bank") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the

material information discussed below is disclosed to Bottomline stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Bottomline is traded on the New York Stock Exchange, headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Bottomline common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Joseph L. Mullen has served as a member of the Board since 1996 and as the Chairman of the Board since May 2007.

11. Individual Defendant Kenneth J. D'Amato has served as a member of the Board since 2014 and as the Lead Independent Director since 2015.

12. Individual Defendant Jennifer M. Gray has served as a member of the Board since 2012.

13. Individual Defendant Jeffrey C. Leathe has served as a member of the Board since 2005.

14. Individual Defendant Peter W. Gibson has served as a member of the Board since May 2016.

15. Individual Defendant Philip J. Hilal has served as a member of the Board since November 2021.

16. Individual Defendant Paul H. Hough has served as a member of the Board since April 2017.

17. Individual Defendant Larry A. Klane has served as a member of the Board since November 2021.

18. Individual Defendant Benjamin E. Robinson III has served as a member of the Board since May 2016.

19. Individual Defendant Michael J. Curran has served as a member of the Board since November 2021.

20. Individual Defendant Robert A. Eberle has served as a member of the Board since 2000 and has been the Company's Chief Executive Officer since November 2006.

21. Defendant Bottomline is incorporated in Delaware and maintains its principal offices at 325 Corporate Drive, Portsmouth, New Hampshire 03801. The Company's common stock trades on the NASDAQ Global Select Market under the symbol "EPAY."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

23. The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.   **The Proposed Transaction**

24.   Bottomline provides various solutions for the banking, financial services, insurance, healthcare, technology, retail, communications, education, media, manufacturing, and government industries. It operates through four segments: Cloud Solutions, Banking Solutions, Payments and Documents, and Other. The company's products and services include Paymode-X, a SaaS solution, which allows businesses to transition from legacy invoice-to-pay processes maximizing cost-savings, efficiency, and security; PTX, a payment platform that offers various ways to pay and get paid to organizations; and financial messaging solutions for risk management to financial institutions and corporations. It also provides Digital Banking IQ, an intelligent engagement platform for banking and payments; and legal spend management solutions, which integrate with claims management, and time and billing systems to automate legal invoice management processes, as well as provide insight into various areas of a company's outside legal spend. In addition, the Company offers fraud and financial crime solutions to monitor, replay, and analyze user behavior and payment transactions to flag and prevent suspicious activity in real time; and healthcare solutions, including electronic signature and mobile document. Further, it provides consulting, implementation, and training services. The Company serves customers in the United States, the United Kingdom, Continental Europe, the Asia-Pacific, and the Middle East. Bottomline was founded in 1989 and is headquartered in Portsmouth, New Hampshire.

25.   On December 17, 2021, Bottomline announced that they had entered into a proposed transaction:

> PORTSMOUTH, N.H., Dec. 17, 2021 (GLOBE NEWSWIRE) -- Bottomline Technologies (Nasdaq: EPAY), a leading provider of financial technology that makes complex business payments simple, smart and secure, today announced that it has entered into a definitive agreement to be acquired by Thoma Bravo, a leading

5

software investment firm, in an all-cash transaction that values Bottomline at approximately $2.6 billion. Upon completion of the transaction, Bottomline will become a privately held company.

Under the terms of the agreement, Bottomline shareholders will receive $57.00 per share in cash, which represents a premium of approximately 42% to Bottomline's unaffected closing stock price on October 19, 2021, the last full trading day prior to the announcement of the formation of the Bottomline Board of Directors' Strategy Committee, and a premium of approximately 41% to Bottomline's 30-day volume weighted average price as of October 19, 2021.

"This transaction is an exciting next chapter for our company, our customers and our employees, and is a testament to the hard work and dedication of the entire Bottomline team," said Rob Eberle, CEO of Bottomline. "We have been executing against our strategy of establishing competitive advantage with a product set designed to transform business payments for companies and financial institutions around the world. Our partnership with Thoma Bravo will provide additional resources and greater flexibility to build on our leadership position, invest in continued innovation and accelerate go-to-market efforts to deliver increased value to customers. Additionally, the transaction will allow Bottomline to benefit from the operating capabilities, capital resources and sector expertise of one of the most experienced and successful software and financial technology investors."

"We are confident that Thoma Bravo is the ideal partner for Bottomline given its strong track record of investment in the technology industry and its deep appreciation for Bottomline's people, products and future growth opportunities," said Joe Mullen, Chairman of the Bottomline Board. "The Bottomline Board of Directors regularly evaluates opportunities to enhance shareholder value. Following a thorough process to review strategic alternatives, we are confident that this transaction with Thoma Bravo provides a compelling opportunity to deliver immediate and certain cash value at a meaningful premium to Bottomline shareholders, as well as significant long-term benefits for customers, channel partners and employees."

"As the digital transformation of business accelerates, we see tremendous opportunity for Bottomline to continue capitalizing on its unique position, particularly in the large and growing B2B payments market, and successfully delivering its diverse portfolio of products that intelligently digitize the way businesses pay and get

paid," said Holden Spaht, a managing partner at Thoma Bravo. "Bottomline is well positioned in exciting and dynamic markets and we look forward to applying our operational and investment expertise in software and financial technology to support Bottomline in its next phase of growth."

Brian Jaffee, a principal at Thoma Bravo added, "We've been tracking Bottomline as part of our broader financial technology effort for many years and are excited to work closely with the company to continue building on its strong track record of consistent innovation and growth. We look forward to partnering with Bottomline's highly-experienced management team to support their vision for continued growth and unwavering focus on delighting customers."

**Transaction Details**

Thoma Bravo has entered into voting agreements with Bottomline's directors (including its chief executive officer) and Clearfield Capital Management. Under these agreements, which represent approximately 4% of Bottomline's outstanding shares, the applicable shareholders have agreed to vote in favor of the transaction, and against any competitive transaction, subject to certain terms and conditions.

The transaction, which was unanimously approved by the Bottomline Board of Directors, is expected to close in the second calendar quarter of 2022 subject to customary closing conditions, including approval by Bottomline shareholders, receipt of approval under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 and approval from the Financial Conduct Authority in the United Kingdom. Upon completion of the transaction, Bottomline's common stock will no longer be listed on any public market.

**Advisors**
Deutsche Bank Securities Inc. is serving as exclusive financial advisor to Bottomline and Skadden, Arps, Slate, Meagher & Flom LLP and Wilmer Cutler Pickering Hale and Dorr LLP are serving as legal advisors to Bottomline. Kirkland & Ellis LLP is serving as legal advisor and BofA Securities, Inc. is serving as exclusive financial advisor to Thoma Bravo.

* * *

26. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Bottomline's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Proxy Statement**

27. On January 18, 2022, Bottomline filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Bottomline Financial Projections*

28. The Proxy Statement fails to provide material information concerning financial projections by Bottomline management and relied upon by Deutsche Bank in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Bottomline management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are

8

probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

29. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Non-GAAP Gross Profit, Adjusted EBITDA, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

30. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[1]

32. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Deutsche Bank's Financial Analysis*

33. With respect to Deutsche Bank's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the estimated terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rates ranging from 2.50% to 3.50%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 9.00% to 10.00%; and (iv) the estimated weighted average cost of capital of Bottomline.

34. With respect to Deutsche Bank's *Analysis of Selected Publicly Traded Companies*, the Proxy Statement fails to disclose the individual metrics for the companies observed by Deutsche Bank in the analysis, including implied enterprise value and Adjusted EBITDA for each selected public company.

35. With respect to Deutsche Bank's *Analysis of Selected Precedent Transactions* for the Company, the Proxy Statement fails to disclose the individual metrics for the transactions observed by Deutsche Bank in the analysis, including the implied purchase prices announced on such date for the selected transaction, the implied enterprise value last-twelve-months Adjusted EBITDA of each selected target company.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

36. With respect to Deutsche Bank's *Wall Street Price Targets* analysis, the Proxy Statement fails to disclose the research analysts observed and the stock price targets for Bottomline's common stock published by each analyst.

37. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial

analysis that were prepared by Deutsche Bank and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

42. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

43. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     The Individual Defendants acted as controlling persons of Bottomline within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Bottomline, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Bottomline, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Bottomline, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

48.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 19, 2022  **MELWANI & CHAN LLP**

By: /s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*